IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILFRED CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:25-CV-394-KFP |
| ) | |
| DEPUTY BRENNAN ECHOLS ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Brennan Echols's Motion to Dismiss the Amended Complaint. Doc. 22, 23. This Motion is fully briefed and ripe for review. Upon consideration of the parties' filings and applicable caselaw, the Court finds that the Motion to Dismiss is due to be GRANTED as to Count I and DENIED as to Count II.

### I.   JURISDICTION

In his Amended Complaint, Carter asserts claims under multiple federal laws,[1] which gives the Court federal question jurisdiction over the action. 28 U.S.C. § 1331. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action" as that determination "calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

---

[1] Echols asserts claims under the Fourth Amendment and 42 U.S.C. § 1983. Doc. 20 ¶ 2.

1

## II.   LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each factual allegation should be "simple, concise, and direct." Fed. R. Civ. P. 8 (d)(1). When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must accept "the complaint's allegations as true and constru[e] them in the light most favorable to the plaintiff." *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012). Accordingly, complaints containing mere legal "conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (quoting *Twombly*, 550 U.S., at 556). This requires enough factual content "'to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

## III.   THE AMENDED COMPLAINT

In his Amended Complaint, Plaintiff Wilfred Carter alleges, while at Victoryland Casino[2] on March 8, 2024, Carter's (unnamed) companion was accused of theft. Doc. 20

---

[2] Victoryland Casino is located in Shorter, Alabama. *See* www.victoryland.com.

¶ 6–7. Carter alleges that he was subsequently detained awaiting law enforcement. *Id.* ¶ 7. Carter alleges that Defendant Brennan Echols—a Sheriff's Deputy in Macon County, Alabama—and other law enforcement officers searched his person and vehicle. *Id.* ¶ 8. Carter states that he consented to the vehicle search. *Id.* Having found no evidence of wrongdoing, Carter states that he was released after several hours. *Id.* ¶ 8–9.

Carter alleges that shortly after leaving Victoryland Casino, Echols and other officers stopped him again at a nearby gas station—they "ordered [Carter] out of his vehicle, restrained him, and conducted another search of [Carter's] person and vehicle without consent, probable cause, or a warrant[,]" even though Echols "had no new information suggesting [Carter] had committed a crime," given that the "earlier search had exonerated" Carter. *Id.* ¶ 10–12. Carter asserts he had not "engaged in any suspicious activity at the gas station that could justify a renewed investigatory stop." *Id.* ¶ 13. Accordingly, Echols acted "willfully, maliciously, and in bad faith, outside the scope of his discretionary law-enforcement authority, for the purpose of harassment and intimidation." *Id.* ¶ 14. As a result, Carter "suffered loss of liberty, emotional distress, embarrassment, and violation of his constitutional rights." *Id.* ¶ 15.

Carter alleges two counts against Echols. Count 1 is a state law false imprisonment claim. *Id.* at 3. Count 2 is an illegal search and seizure claim under the Fourth Amendment and 42 U.S.C. § 1983. *Id.* As relief, Carter requests compensatory damages, punitive damages, attorney's fees and costs under 42 U.S.C. § 1988, and "[s]uch further relief as the Court deems just and proper." *Id.* at 4.

## IV.  DISCUSSION

Because Carter asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331, the Court will review the federal claims first. In Count II, Carter alleges that Echols, "acting under color of law, unreasonably detained and searched [Carter] without a warrant, consent, probable cause, or reasonable suspicion," pursuant to the Fourth Amendment and 42 U.S.C. §1983. Doc. 20 ¶ 21. Carter alleges Echols's "conduct violated clearly established law . . . recognizing that repeated detentions absent new evidence are unconstitutional." *Id.* ¶ 22. Further, Carter argues that "[a] reasonable officer would have known that detaining and searching [Carter] a second time—after a fruitless prior search— was unlawful." *Id.* ¶ 23. In response, Echols asserts that qualified immunity bars Carter's claims under the Fourth Amendment and § 1983. Doc. 22 at 1. Echols argues that he "acted within his discretionary authority," Carter "fails to allege a constitutional violation," and "[n]o clearly established law prohibits the alleged conduct." *Id.*

In Count I, Carter alleges a state law false imprisonment claim, and asserts Echols "confined [Carter] at the gas station without lawful justification," which was done "maliciously, in bad faith, and beyond the scope of his lawful authority." Doc. 20 ¶ 17–18. Echols states that he is absolutely immune from suit under the Alabama Constitution "for acts taken within the line and scope of [his] duties." Doc. 23 at 3.

### A. Carter has plausibly pleaded that his constitutional rights were violated under the Fourth Amendment (Count II).

In his Motion, Echols argues that he is entitled to qualified immunity, barring Carter's Fourth Amendment and § 1983 claims. *Id.* at 2. As support, Echols asserts that he

4

acted within his discretionary authority, and that Carter failed to allege that Echols violated Carter's constitutional rights. *Id.* at 4–5.

As a preliminary matter, § 1983 provides a private right of action to enforce constitutional rights against government officials. *Gervin v. Florence*, 139 F.4th 1236, 1246 (11th Cir. 2025). Here, although Carter brings his unreasonable search and seizure claim under both § 1983 and the Fourth Amendment, only a single analysis is required because § 1983 is the mechanism by which to assert a Fourth Amendment claim against Echols. *See Gennusa v. Canova*, 748 F.3d 1103, 1109–10 (11th Cir. 2014) (asserting a claim under § 1983 for a Fourth Amendment violation by police).

"Entitlement to qualified immunity is for the court to decide as a matter of law." *Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018). "The qualified immunity defense shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457, U.S. 800, 818 (1982)). Qualified immunity applies to mistakes of law, mistakes of fact, or a mixture of both, *Fuqua v. Turner*, 996 F.3d 1140, 1149 (11th Cir. 2021), but not "plainly incompetent" acts and knowing violations of federal law. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

To invoke qualified immunity, the government official bears the burden of establishing that "he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017). Government officials exercise

discretionary authority when they perform "legitimate job-related function[s]" through means within their power. *Donald v. Norris*, 131 F.4th 1255, 1263 (11th Cir. 2025).

Then, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate" because the official violated a clearly established constitutional right. *Gaines*, 871 F.3d at 1208. "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

### i. Echols operated within his discretionary authority when he stopped Carter for the second time.

To properly bring a qualified immunity defense, Echols must first establish that he acted within his discretionary authority. *Gaines*, 871 F.3d at 1208. According to Carter, Echols "ordered [Carter] out of his vehicle, restrained him, and conducted [a] search of his person and vehicle, without consent, probable cause, or a warrant." Doc. 20 ¶ 11. Echols does not provide his own account of the events that day. He argues that he was exercising his "reasonable, if arguable, law-enforcement judgment," and that Carter "pleads no facts negating at least arguable reasonable suspicion for a brief investigative detention." Doc. 23 at 4–5.

Police officers may conduct warrantless vehicle searches that are supported by probable cause of illegality. *United States v. Ross*, 456 U.S. 798, 809 (1982). Further, police "officers may briefly detain a suspect and search the suspect's person for weapons when the officers have reasonable suspicion" that "the suspect may be . . . armed and

dangerous." *United States v. Packer*, 375 F. App'x 976, 978–79 (11th Cir. 2010). Therefore, temporarily setting aside the question of whether Echols's actions were proper, ordering Carter out of the car, and searching Carter's vehicle and person were "legitimate job function[s]" within Echols's power as a police officer. *Donald*, 131 F.4th at 1263.

Indeed, the discretionary authority inquiry does not review whether it was within the defendant's authority to commit allegedly illegal acts. *Id.* at 1264. Instead, it only asks whether, "if done for a proper purpose," such actions would "be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Therefore, if Echols had probable cause to believe that Carter's car contained evidence of illegality, *Ross*, 456 U.S. at 809, or reasonable suspicion that Carter was armed and dangerous, *Packer*, 375 F. App'x at 978–79, it would have been permissible for Echols to search Carter's vehicle and person, respectively. Echols's actions, "if done for a proper purpose," were lawfully "within . . . the outer perimeter of [his] discretionary duties." *Donald,* 131 F.4th at 1264. Thus, Echols acted within his discretionary authority. *Id.* at 1263.

> **ii. Carter plausibly pleaded that Echols violated Carter's clearly established constitutional rights by stopping him for a second time, without reasonable suspicion.**

After Echols establishes that he acted within his discretionary authority, the burden shifts to Carter "to establish that qualified immunity is not appropriate" because Echols violated a clearly established constitutional right. *Gaines*, 871 F.3d at 1208. To show that Echols violated a clearly established constitutional right during the second stop, Carter must do one of three things: (1) "identify a qualifying case with indistinguishable facts";

7

(2) "rely on 'a broad statement of principle within the Constitution, statute, or case law'"; or (3) in the absence of supporting case law, "show that [Echols's] behavior was 'so egregious' that it was obvious 'a constitutional right was clearly violated.'" *Watkins v. Davis*, 156 F.4th 1084, 1097–98 (11th Cir. 2025) (quoting *Gervin*, 139 F.4th at 1261).

In his Complaint, Carter alleges that Echols and other officers first searched Carter's person and his vehicle in response to allegations that Carter's companion had stolen from a casino. Doc. 20 ¶ 7–8. Carter alleges, shortly afterward, Echols and other officers "unlawfully detained and searched" Carter a second time at a nearby gas station "without a warrant, consent, probable cause, or reasonable suspicion." *Id.* ¶ 10–12, 21. Carter argues that he "was not engaged in any suspicious activity at the gas station that could justify a renewed investigatory stop." *Id.* ¶ 13. Carter further states that "[a] reasonable officer would have known that detaining and searching" a person "a second time—after a fruitless prior search—was unlawful." *Id.* ¶ 23. Echols responds, "[e]ven taken as true, [Carter's] allegations at most describe a reasonable, if arguable, law-enforcement judgment, not a knowing violation of the Fourth Amendment." Doc. 23 at 4.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend. IV; *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"). A law enforcement officer conducts a seizure when they "in some way restrain[] the liberty of a citizen . . . by means of physical force or show of authority." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Accordingly, temporarily detaining a person during a vehicle stop, "even if only for a brief period and for a limited purpose," is considered a seizure. *United States v. Allen*, 274 F.

App'x 811, 817 (11th Cir. 2008). A vehicle stop must be supported by either "probable cause to believe that a traffic violation has occurred or reasonable suspicion that a crime has been or will be committed." *Id.* at 817–18. Here, neither party asserts that Echols stopped Carter to address a traffic violation, nor do the facts point in that direction. Therefore, the Court will review whether Echols had reasonable suspicion that Carter had engaged in, or planned to be engaged in, criminal activity. *Allen*, 274 F. App'x at 817–18.

For a police officer's suspicion to be "reasonable," it must exceed an "inchoate and unparticularized suspicion or hunch." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (quoting *Terry*, 392 U.S. at 27). Police officers are only expected to exercise their commonsense knowledge and experience, rather than scientific certainty, to make such a determination. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004). They must be able to objectively justify making a stop from the totality of the circumstances. *Powell*, 222 F.3d at 917.

Police officers must limit the scope of their investigatory stop to the discrete reason for making the stop in the first place. *United States v. Anguiano*, 791 F. App'x 841, 848 (11th Cir. 2019). Thus, police officers are not allowed to extend a stop to "engage in a fishing expedition based solely on a hunch that illegal activity may be afoot." *United States v. Byron*, 817 F. App'x 753, 760 (11th Cir. 2020). When the police choose to stop a person for a second time, they must have some articulable reason for doing so. *See United States v. Anguiano*, 791 F. App'x 841, 845, 854 (11th Cir. 2019) (reviewing two traffic stops of the same vehicle on the same day by two different police officers, finding both stops

permissible because they were justified on independent grounds, even though the first officer had also notified the second officer that the vehicle occupants seemed suspicious).

Echols does not provide any information indicating that he had reasonable suspicion to stop Carter for a second time. He argues that officers in the Eleventh Circuit are "entitled to immunity where a reasonable officer could believe his conduct lawful under the circumstances." Doc. 23 at 5. However, Echols does not provide any facts showing why a reasonable officer would believe his conduct was lawful under the circumstances. Echols argues that Carter failed to show that Echols had at least arguable reasonable suspicion for the stop, *id.*, but this misconstrues Carter's burden. Carter must provide enough information showing that Echols clearly violated one of Carter's legal rights. *Watkins*, 156 F.4th at 1097–98. Carter alleges that Echols "had no new information suggesting [Carter] had committed a crime," because the "earlier search had exonerated [Carter.]" Doc. 1 ¶ 12. Further, Carter alleges that he did "not engage[] in any suspicious activity at the gas station that could justify a renewed investigatory stop." *Id.* ¶ 13.

Given that these are the only facts before the Court, Carter has presented enough facts showing that the stop plausibly violated two broad principles within federal law. *Watkins*, 156 F.4th at 1097–98. First, investigatory stops must be objectively justifiable given the circumstances, *Wardlow*, 528 U.S. at 123, exceeding an "inchoate and unparticularized suspicion or hunch," *Powell*, 222 F.3d at 917. The parties' pleadings do not provide an objective basis justifying the second stop. Neither has Echols provided any information showing that the stop was initiated by more than a mere hunch.

10

Second, investigatory stops must be limited in scope to the discrete reason justifying the stop in the first place, *Anguiano*, 791 F. App'x at 848, and must not be extended to "engage in a fishing expedition based solely on a hunch that illegal activity may be afoot." *Byron*, 817 F. App'x at 760. The facts here justify the first detention and search, but not the second. Echols does not provide a discrete reason justifying the second stop. Further, Echols does not provide a reason to believe that he was constitutionally permitted to search Carter and his vehicle again, showing that his actions were more than a mere fishing expedition.

Therefore, Carter carried his burden to overcome Echols's qualified immunity defense at this time. Carter sufficiently alleged that Echols did not have a reason to stop Carter for a second time, after detaining him and searching his car at the casino. If proven, Echols clearly violated Carter's Fourth Amendment rights. Accordingly, the Motion to Dismiss is due to be denied as to Count II.

### B. Carter has not adequately pleaded a false imprisonment claim (Count I).

In Count I, Carter alleges that Echols falsely imprisoned him in violation of Alabama state law. Doc. 20 at 3. Carter alleges that Echols "intentionally confined [Carter] at the gas station without lawful justification." *Id.* ¶ 17. Carter argues that Echols "acted maliciously, in bad faith, and beyond the scope of his lawful authority." *Id.* ¶ 18. Echols responds that he is entitled to absolute immunity under the Alabama Constitution. Doc. 23 at 3.

Under 28 U.S.C. § 1367, when a district court has federal question jurisdiction over a claim, the court has supplemental jurisdiction over related claims that "form part of the

same case or controversy." The "'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact within a substantial federal claim." *Lucero v. Torsch*, 121 F.3d 591, 597 (11th Cir. 1997). Here, because the factual allegations supporting both the federal and state claims here are the same, the Court finds that they arise out of a common nucleus of operative fact, satisfying the "case or controversy" standard under § 1367. *Id.*

In Alabama, false imprisonment is "the unlawful detention of [a] person . . . for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. Any exercise of force depriving a person of their liberty by compelling them to stay in a certain place is considered an imprisonment. *Crown Cent. Petroleum Corp. v. Williams*, 679 So.2d 651, 653 (Ala. 1996). It follows that a wrongful detention by police, without reasonable suspicion or probable cause, would support a false imprisonment claim. *Cf. Upshaw v. McArdle*, 650 So.2d 875, 878 (Ala. 1994) (permitting a false imprisonment claim for a false arrest).

Yet, sheriff's deputies, as Alabama state employees, are protected by sovereign immunity for actions taken in their official capacities and individually. *Karrick v. Johnson*, 659 So.2d 77, 79 (Ala. 1995) (citing Ala. Const. Art. I, § 14). Nevertheless, state employees are not immune from actions taken "willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." *Ex parte Ala. Dep't Transp.*, 764 So.2d 1263, 1268 (Ala. 2000). To properly claim sovereign immunity, the state employee bears the burden of showing that the claims arise from the "employees' performance of a discretionary duty on behalf of the State." *Id.* Then, the burden shifts to

the plaintiff to show that the employee acted "willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." *Id.*

In the previous section, the Court found that Echols acted within his discretionary authority by stopping Carter and searching his vehicle. *See infra*. Therefore, Carter bears the burden of pleading that Echols is nevertheless exempted from raising the sovereign immunity defense. *Ex parte Ala. Dep't Transp.*, 764 So.2d at 1268. In his Complaint, Carter argues that Echols's actions were "willful[], malicious[], and in bad faith" because he sought to "harass[] and intimidat[e]" Carter. Doc. 20 ¶ 14. However, Carter does not provide additional facts showing that Echols intended to harass or intimidate him. Even assuming that Echols stopped Carter in pursuit of an "inchoate and unparticularized suspicion or hunch," *Powell*, 222 F.3d at 917, Alabama courts have recognized that police officers can have good faith hunches or suspicions, *Duckworth v. State*, 612 So.2d 1284, 1286 (Ala. Crim. App. 1992). Therefore, without more factual context, Carter has not plausibly alleged that Echols "acted maliciously, [and] in bad faith," overcoming Echols's sovereign immunity defense. Simply listing the elements of a legal claim without a supporting factual and legal basis fails to state a claim upon which relief can be granted, which merits dismissal. Accordingly, Count I is due to be dismissed.

## V.   CONCLUSION

For the reasons stated above, it is ORDERED that Defendant's Motion to Dismiss is GRANTED as to Count I and DENIED as to Count II.

DONE this 1st day of December 2025.

                                       /s/ Kelly Fitzgerald Pate
                                       KELLY FITZGERALD PATE
                                       UNITED STATES MAGISTRATE JUDGE